FILED by _____ D.C.
ELECTRONIC

Sept. 23, 2008

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA FORT LAUDERDALE DIVISION

| | |
|---|---|
| OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, STATE OF FLORIDA <br><br> Plaintiff, <br><br> v. <br><br> COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, COUNTRYWIDE HOME LOANS, INC., a New York Corporation, and ANGELO R. MOZILO, individually and in his capacity as Chief Executive Officer of Defendant COUNTRYWIDE FINANACIAL CORPORATION, <br><br> Defendants. | Civil Action No. <br><br> **08-61511-Civ-ALTONAGA/BROWN** |

### NOTICE OF REMOVAL

Defendants Countrywide Financial Corporation and Countrywide Home Loans, Inc. (collectively "Countrywide") by their undersigned counsel, respectfully notify the Court under 28 U.S.C. §§ 1331, 1332, 1334, 1367, 1441, 1446, 1452, and 1453, that they hereby remove this action from the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida to the United States District Court for the Southern District of Florida, Fort Lauderdale Division.

### BACKGROUND

1.      On June 30, 2008, Plaintiff filed this action in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida. It was assigned Civil Action No. 08-30105. In accordance with 28 U.S.C. § 1446(a), a copy of the Summons, Complaint, and all other documents served on Countrywide are attached as Exhibit A.

2.    Countrywide was served on September 3, 2008. Defendant Angelo R. Mozilo has not been served. This Notice of Removal is therefore timely under 28 U.S.C. § 1446(b) because it is filed no later than 30 days after the earliest effective date of service.

3.    All defendants consent to and join in this notice of removal. By a Notice of Consent to Removal, attached as Exhibit B, Angelo R. Mozilo "officially and unambiguously" contents to and joins in this notice of removal.

## BASES FOR REMOVAL JURISDICTION

4.    <u>Substantial federal question.</u> This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331 and is one which may be removed to this Court by Countrywide pursuant to 28 U.S.C. § 1441(b) in that Plaintiff asserts claims that will necessitate the adjudication of substantial, disputed questions of federal law.

5.    <u>Class Action Fairness Act.</u> Additionally, the claims asserted against Countrywide in this action are removable under the Class Action Fairness Act of 2005. This is a minimally diverse, representative action, in the nature of a class action. It is brought on behalf of more than 100 consumers, and the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest. *See* 28 U.S.C. §§ 1332(d) & 1453.

6.    <u>Bankruptcy.</u> In the alternative, and only in the event that the Court finds that it does not have jurisdiction based on at least one of the previous grounds alleged in this Notice, the claims asserted against Countrywide in this action are removable based on federal bankruptcy jurisdiction, pursuant to 28 U.S.C. §§ 157, 1331, 1334, 1367, 1441, and 1452, and Federal Rule of Bankruptcy Procedure 9027 because this is a civil action arising under the Bankruptcy Code or arising in one or more cases under the Bankruptcy Code. *See* 28 U.S.C.

2

§ 1334(b).  Under Bankruptcy Rule 9027(a)(1), Countrywide hereby states that, upon removal, the proceeding is core.

    7.    Supplemental Jurisdiction.  To the extent that any of Plaintiff's claims lack an independent basis for original federal jurisdiction, this Court has supplemental jurisdiction over such claims because they are so related to claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *See* 28 U.S.C. § 1367.

## SUBSTANTIAL FEDERAL QUESTION

    8.    This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims that will necessitate the adjudication of substantial, disputed questions of federal law.

    9.    Federal question jurisdiction is available in actions involving only state-law claims where those claims necessarily involve the resolution of underlying disputed questions of federal law. *See, e.g.*, *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) (affirming federal-question jurisdiction over state quiet-title action based on need to resolve predicate issue under federal Internal Revenue Code).

    10.    Plaintiff's complaint asserts claims that necessitate resolution of substantial, disputed questions of federal law, including but not limited to the Truth-in-Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*  A determination of whether Plaintiff may recover for the conduct described in their complaint will necessarily turn on substantial, disputed questions of federal law.  Hence, this Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

3

11.     Plaintiff's complaint asserts claims relating to the mortgage origination practices of Countrywide.  Plaintiff alleges that Countrywide originated subprime Adjustable Rate Mortgages ("ARMs") in an unfair or deceptive fashion by misrepresenting or concealing the terms, risks, or suitability of the loans such that consumers could not understand or afford the loans.  (*See* Compl. (Ex. A) ¶¶ 35, 38-40.)  Plaintiff asserts that these misrepresentations "were either direct and/or the result of hiding and/or not sufficiently disclosing these material terms to the consumer prior to the closing of the loans."  (*Id.* ¶ 35.)

12.     Plaintiff's claims for relief purport to be brought under state law—the Florida Deceptive and Unfair Trade Practices Act, Fla. Gen. Stat. §§ 501.201 *et seq.* ("FDUTPA").  The FDUTPA, however, expressly does not apply to "[a]n act or practice required or specifically permitted by federal or state law." *Id.* § 501.212(1). *See Eirman v. Olde Discount Corp.*, 697 So. 2d 865, 866 (Fla. Dist. Ct. App. 1997) (upholding dismissal of FDUTPA claim where the alleged wrongful conduct "was permitted by federal law during the time period at issue here.").

13.     A FDUTPA claim challenging conduct governed by TILA necessarily depends on the application or construction of federal law.  In order for Plaintiff to state a claim under FDUTPA, the conduct they challenge must fall within its reach, and that conduct must therefore not be regulated under TILA.  And in determining whether the conduct Plaintiff challenges falls within TILA, the Court must necessarily resolve issues concerning TILA's scope that arise entirely under federal law.  Plaintiff's state-law claims, therefore, necessarily require a determination of federal law. *Grable*, 545 U.S. at 315.  Courts applying Illinois's materially identical exclusion have held that, when the conduct at issue is governed by a TILA, a plaintiff's right to relief under state unfair competition law necessarily depends on the application or

4

construction of federal law. *See Jackson v. South Holland Dodge, Inc.*, 755 N.E.2d 462, 470 (Ill. 2001) (affirming dismissal of Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") complaint because defendant complied with TILA); *Lanier v. Assocs. Fin. Inc.*, 499 N.E.2d 440, 445 (Ill. 1986) (affirmed dismissal of plaintiff's ICFA claim because the complaint failed to state a claim under TILA).

14.    Plaintiff's claims here are phrased in terms of state law but implicate and require resolution of substantial, disputed questions of federal law. In particular, for Plaintiff to prove an entitlement to relief on the claim that Countrywide inadequately disclosed the terms of the loans alleged in the complaint, Plaintiff will have to prove that Countrywide violated TILA, a federal statute. "The declared purpose of [TILA] is 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'" *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)). "Accordingly, [TILA] requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Id.* (citing 15 U.S.C. §§ 1631, 1632, 1635, 1638). Among the matters governed by TILA that are of particular relevance to this case are the disclosure of the terms under which interests rates adjust and of the possibility of negative amortization, and credit advertising generally. (*See* Compl. ¶ 35(a) (Defendants "misrepresent[ed] the amount of time the initial 'fixed' interest rates would be in effect"); *id.* ¶ 35(b) (Defendants "misrepresent[ed] that the interest rates on the loans were 'fixed' when that was not the case"); *id.* ¶ 35(c) (Defendants "misrepresent[ed] the manner and

degree in which payments would increase subsequent to the termination of the initial fixed rate period").)

15.     Because Plaintiff's state-law claims necessarily involve the resolution of underlying substantial, disputed questions of federal law, including whether Countrywide's disclosures were adequate under TILA and implementing regulations, federal question jurisdiction is appropriate.

16.     There is a significant federal interest in the adjudication of these claims in a federal forum. *Grable*, 545 U.S. at 314. Furthermore, the exercise of federal question jurisdiction here will not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Id.* To the contrary, TILA authorizes a federal private right of action in certain circumstances. *See* 15 U.S.C. §§ 1635, 1640. This demonstrates that there is a significant federal interest in adjudicating this type of dispute in federal court. *Grable*, 545 U.S. at 317-18 (existence of a federal private right of action weighs in favor of federal question jurisdiction, while absence weighs against) (citing *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804 (1986)).

17.     Thus, there is a significant interest in having these federal issues adjudicated in a federal forum, and removal of this action will not disrupt any balance between federal and state judicial responsibilities over related disputes.

## REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

18.     In addition, this action is removable as a class action under the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. §§ 1332(d) & 1453.

19.     This is a class action for CAFA purposes: It is a representative action brought by one party (the State) on behalf of others (Florida consumers). *See* § 1332(d)(1)(B)

(defining "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action"); § 1453(a) ("In this section, the terms 'class', 'class action', 'class certification order', and 'class member' shall have the meanings given such terms under section 1332(d)(1)."); *see also Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 430 (5th Cir. 2008) (concluding that state *parens patriae* action was at least mass action under CAFA, and leaving open whether it was also class action). Plaintiff seeks to obtain monetary damages specifically on behalf of thousands of Florida residents, and claims that the statute under which he has sued (the FDUTPA) authorizes him to sue in a representative capacity on their behalf. (*See* Compl. at 12 (requests for relief).) Plaintiff seeks actual damages on behalf of a group of unnamed consumers, who have an actual, private stake in the outcome of this litigation. Thus, this case is in the nature of a class action, and therefore is a class action under CAFA, regardless of whether Plaintiff specifically identifies it as such. *See Caldwell*, 536 F.3d at 424 ("'Generally speaking, lawsuits that resemble a purported class action should be considered class action for the purpose of applying these provisions.'") (quoting S. Rep. No. 109-14, at 35 (2005)); *id.* at 428 (noting that private plaintiffs for whom state sought recovery were "the real parties in interest").

20.     Nor does it matter that this class action was brought by a state attorney general, rather than a private party. As the Fifth Circuit recognized in *Caldwell*, Congress considered and rejected an amendment that would have exempted actions brought by state attorneys general from CAFA. *Id.* (citing 151 Cong. Rec. S1157, 1163-64 (daily ed. Feb. 9, 2005))). Indeed, Congress created a specific carve-out for class actions in which a state or state officer is a defendant, *see* § 1332(d)(5)(A), but did not create a similar provision for cases in

which a state officer is a plaintiff.  Because Congress chose not to exempt class actions brought

by a state, those actions are removable under CAFA.

      21.     Moreover, the proposed class has more than 100 putative members.  *See*

§ 1332(d)(5)(B).  Countrywide affiliates have originated more than 63,000 sub-prime mortgage

loans secured by Florida real property since January 2004.  (See accompanying Declaration of

Anaita Bahadurji ¶ 2-3.)  In addition, Countrywide affiliates have serviced more than 178,000

sub-prime mortgage loans secured by Florida real property since January 2004.  (*Id.* ¶¶ 2, 4.)

Plaintiff seeks to recover monetary damages on behalf of a substantial number of the borrowers

of these mortgage loans, certainly more than 100 such borrowers.

      22.     The amount in controversy requirement is also met.  Specifically, Plaintiff

seeks restitution on behalf of thousands of Florida consumers (who are the real parties in interest

for those claims), in many cases asking for tens or hundreds of thousands of dollars to a single

consumer.  (*See* Compl. at 12 (request for relief ¶ 1).)  In addition, Plaintiff seeks civil penalties

in the amount of $10,000 for each violation of the FDTUPA.  (*Id.* (request for relief ¶ 2).)

Collectively, those claims seek recovery exceeding $5,000,000, excluding costs and interest.  *See*

28 U.S.C. § 1332(d)(2) & (6).

      23.     Lastly, the diversity of citizenship requirement is met.  Jurisdiction under

CAFA is proper so long as minimal diversity exists.  § 1332(d)(2).  Here, Plaintiff seeks relief on

behalf of a class that includes Florida citizens—the real parties in interest.  Neither Countrywide

Financial Corp. nor Countrywide Home Loans, Inc. is a Florida citizen.  (See accompanying

Declaration of Kimberly Shambley ¶¶ 2-3.)  Thus, minimal diversity exists.

      24.     Accordingly, this case could have been filed in this Court as a class action

under § 1332(d), and it is therefore removable under § 1453(b).

## BANKRUPTCY REMOVAL

25.     In the alternative, and only in the event that the Court finds that it does not

have jurisdiction based on at least one of the previously asserted grounds alleged in this notice,

the claims asserted against Countrywide are removable based on federal bankruptcy jurisdiction,

pursuant to 28 U.S.C. §§ 157, 1331, 1334, 1441, and 1452, and Rule 9027 of the Federal Rules

of Bankruptcy Procedure, because this is a civil action arising under the Bankruptcy Code or

arising in one or more cases under the Bankruptcy Code. *See* 28 U.S.C. § 1334(b).  In that event,

Countrywide will file an appropriate motion to stay any referral to bankruptcy court and to

remain in district court.

26.     This action is brought on behalf of Florida residents who are borrowers of

sub-prime mortgage loans.  Since January 1, 2004, Countrywide affiliates have serviced over

178,000 sub-prime mortgage loans secured by Florida real property.  Of those loans, at least

5,000 involved borrowers ("debtors") who have sought relief in United States bankruptcy courts,

including in this District.  Countrywide will, at the appropriate time, be prepared to attempt to

identify the names and case numbers of some or all of the debtors who sought relief in

bankruptcy court in this District.

27.     Some or all of the claims asserted in this case are pre-petition assets that

belong to the estates of bankrupt borrowers rather than to the bankrupt borrowers individually.

Those claims are property of the bankruptcy estates under 11 U.S.C. §§ 541 and 1306(a).  Even

though some of the bankruptcy cases have been closed, or the debtors have been discharged, the

claims remain the property of the bankruptcy estates, and not of the individual debtors, if the

debtors failed to schedule those claims under 11 U.S.C. § 521(1) or those claims were not

exempt or were not administered or abandoned during the bankruptcy case.  11 U.S.C. § 554(d).

To the extent a debtor in a pending or previous bankruptcy case has raised claims similar to those raised in this case, the claims are part of the estate or are already at issue in bankruptcy cases. This Court has original and exclusive jurisdiction over claims and property of the various bankruptcy cases filed in this district, including the claims asserted in this case, filed by the Florida Attorney General.

28. Upon removal, this proceeding is a core matter in numerous bankruptcy cases because, for example, it is a proceeding that affects the liquidation of assets of the estate. *See* 28 U.S.C. § 157(b)(2)(O).

29. Although filed by the Florida Attorney General, this action is not properly understood as an exercise of regulatory or police power under 28 U.S.C. § 1452(a) because it seeks to protect a pecuniary interest in property of the debtors or their bankruptcy estates. (*See, e.g.*, Compl. at 12 (seeking award of "actual damages to all consumers who are shown to have been injured in this action pursuant to Section 501.207(1)(c), Florida Statutes (2007).") Accordingly, bankruptcy removal is proper here.

## SUPPLEMENTAL JURISDICTION

30. To the extent that any of Plaintiff's claims lack an independent basis for original federal jurisdiction, this Court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367 because they are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## NOTICE

31. In accordance with 28 U.S.C. § 1446(d), Countrywide will promptly file a copy of this Notice of Removal with the clerk of the Circuit Court of the Seventeenth Judicial

Circuit, in and for Broward County, Florida, and will serve a copy of the same upon counsel for the Plaintiff.

Respectfully submitted,

Dated:  September 23, 2008

Linda A. Conahan
Florida Bar No.  252743
GUNSTER, YOAKLEY & STEWART, P.A.
450 East Las Olas Blvd.
Suite 1400
Fort Lauderdale, FL  33301
Telephone: (954) 468-1370
Facsimile: (954) 523-1722
lconahan@gunster.com

*Attorneys for Defendants Countrywide Financial Corporation and Countrywide Home Loans, Inc.,*

OF COUNSEL

John H. Beisner
Brian D. Boyle
Matthew M. Shors
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C.  20006-4001
Telephone: (202) 383-5300
Facsimile:  (202) 383-5414

DC1:757461.2

**CT** CORPORATION
A WoltersKluwer Company

**TO:**   Karina Buitrago, Litigation Specialist
Countrywide Financial Corporation
5220 Las Virgenes Rd., Mail Stop: AC-11
Calabasas, CA 91302

**RE:**   **Process Served in Florida**

**FOR:**   Countrywide Home Loans, Inc. (Domestic State: NY)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:**   Office of the Attorney General, Department of Legal Affairs, State of Florida, Pltf. vs. Countrywide Financial Corporation, etc., et al. including Countrywide Home Loans, Inc., etc., Dfts.

**DOCUMENT(S) SERVED:**   Pluries Summons, Complaint

**COURT/AGENCY:**   Broward County Circuit Court, FL
Case # 08-30105-03

**NATURE OF ACTION:**   Violation of the Florida's Deceptive and Unfair Trade Practices Act - Misrepresentation - hiding and/or not sufficiently disclosing material terms to the consumer prior to the closing of loans - Seeking damages, penalties and injunctive relief

**ON WHOM PROCESS WAS SERVED:**   C T Corporation System, Plantation, FL

**DATE AND HOUR OF SERVICE:**   By Process Server on 09/03/2008 at 09:00

**APPEARANCE OR ANSWER DUE:**   Within 20 days after service

**ATTORNEY(S) / SENDER(S):**   George E. Rudd
Office of the Atttorney General
Department of Legal Affairs
110 S.E. 6th Street
Tenth Floor
Ft. Lauderdale, FL 33301
954-712-4600

**ACTION ITEMS:**   Telephone, Karina Buitrago , 818-871-4034
SOP Papers with Transmittal, via  Fed Ex 2 Day , 798505158377
Image SOP - Page(s): 15
Email Notification, Karina Buitrago Karina_Buitrago@Countrywide.com
Email Notification, Nicole Coleman Nicole_Coleman@Countrywide.com

**SIGNED:**   C T Corporation System
**PER:**   Donna Moch
**ADDRESS:**   1200 South Pine Island Road
Plantation, FL 33324
**TELEPHONE:**   954-473-5503

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**Exhibit A**

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL
CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

OFFICE OF ATTORNEY GENERAL,
DEPARTMENT OF LEGAL AFFAIRS,
STATE OF FLORIDA,

           Plaintiff,

v.

COUNTRYWIDE FINANCIAL CORPORATION,
a Delaware corporation, COUNTRYWIDE
HOME LOANS, INC., a New York Corporation,
and ANGELO R. MOZILO, individually and
in his capacity as Chief Executive Officer of
Defendant COUNTRYWIDE FINANCIAL
CORPORATION,

           Defendants.
_____/

CASE NO.: 08-30105 03
JUDGE:    HENNING

9-3-08 9:00AM
8K 477

**SUMMONS**

STATE SERVICE

TO:    COUNTRYWIDE HOME LOANS, INC.
        c/o Registered Agent
        C T CORPORATION SYSTEM
        1200 South Pine Island Road
        Plantation, FL 33324

## IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the Clerk of this Court. A phone call will not protect you. Your written response, including the above case number given above and the names of parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of your written response to the "Plaintiff(s)/ Plaintiff's Attorney" named below.

## IMPORTANT

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demands adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su

STATE SERVICE
# 

respuesta por escrito, incluyendo el numero del caso y los numbres de las partes interesadas en dicho caso. Si usted no contesta la demands a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requistos legales. Se lo desea, puede usted consultar a un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Se desea responder a la demands por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted inviar por correo o entregar una copia de su respuesta a la persona denuminada abajo como "Plaintiff/Plaintiff's Attorney." Demandate o Abogado del emanadante)

IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vouse risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

George Rudd FBN 178136
Fulvio Joseph Gentin FBN 0037493
Assistant Attorney General
Plaintiff/Plaintiff's Attorney
110 SE 6th Street, 9th Floor
Ft. Lauderdale, FL 33301
954-712-4600 Fax 954-712-4658

**THE STATE OF FLORIDA**
**TO EACH SHERIFF OF THE STATE:**

   **YOU ARE COMMANDED** to serve this summons and a copy of the complaint in this lawsuit on the above-named defendant.

AUG 28 2008

   DATED ON _____ 2008.

Howard C. Forman
Clerk of the Circuit Court

By: NAILA THOMAS

As Deputy Clerk

A TRUE COPY
Circuit Court Seal



### IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL
### CIRCUIT, IN AND FOR BROWARD COUNTY, FLORIDA

**OFFICE OF THE ATTORNEY GENERAL,**
**DEPARTMENT OF LEGAL AFFAIRS,**
**STATE OF FLORIDA,**

Plaintiff,

Case No. 08  30105

vs.

**COUNTRYWIDE FINANCIAL CORPORATION,**
a Delaware corporation, **COUNTRYWIDE**
**HOME LOANS, INC.,** a New York corporation,
and **ANGELO R. MOZILO,** individually and in
his capacity as Chief Executive Officer of Defendant
**COUNTRYWIDE FINANCIAL CORPORATION,**

Defendants.

_____/

### COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES
### AND OTHER STATUTORY RELIEF

Plaintiff, **OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL**

**AFFAIRS, STATE OF FLORIDA** (hereinafter referred to as "Plaintiff"), files the instant cause

of action against Defendants **COUNTRYWIDE FINANCIAL CORPORATION,** a Delaware

corporation, and its wholly owned subsidiary **COUNTRYWIDE HOME LOANS, INC.,** a New

York corporation, and against **ANGELO R. MOZILO,** individually and in his capacity as Chief

Executive Officer of Defendant **COUNTRYWIDE FINANCIAL CORPORATION**

(hereinafter collectively referred to as Defendants).

### JURISDICTION AND VENUE

1.       This is an action for damages and injunctive relief, brought pursuant to Florida's

Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes (2007).

1

2.    This Court has jurisdiction pursuant to the provisions of said statute.

3.    Plaintiff is an enforcing authority of Florida's Deceptive and Unfair Trade Practices Act as defined in Chapter 501, Part II, Florida Statutes, and is authorized to seek damages, injunctive and other statutory relief pursuant to this part.

4.    The statutory violations alleged herein occurred in or affected more than one judicial circuit in the State of Florida.  Venue is proper in that Defendants did business in Broward County, Florida.

5.    Plaintiff has conducted an investigation and the head of the enforcing authority, Attorney General Bill McCollum, has determined that an enforcement action serves the public interest.

6.    Defendants, at all times material hereto, provided goods or services as defined within Section 501.203(8), Florida Statutes (2007).

7.    Defendants, at all times material hereto, solicited consumers within the definitions of Section 501.203(7), Florida Statutes (2007).

8.    Defendants, at all times material hereto, were engaged in a trade or commerce within the definition of Section 501.203(8), Florida Statutes (2007).

### DEFENDANTS

9.    Defendant MOZILO is an adult male over the age of twenty one and is sui juris.

10.    Defendant MOZILO at all times material hereto, has managed, controlled, participated and has knowledge of the day-to-day activities of Defendant COUNTRYWIDE FINANCIAL CORPORATION and was a shareholder, owner, officer and/or director of Defendant

11.    At all times material hereto, Defendant MOZILO knew of and controlled the activities of COUNTRYWIDE FINANCIAL CORPORATION and its wholly owned subsidiary COUNTRYWIDE HOME LOANS, INC.   Defendant MOZILO had actual knowledge or knowledge fairly implied on the basis of objective circumstances, that the acts of the officers, employees, agents, and representatives of the corporate Defendants as described below, were unfair or deceptive and/or prohibited by law.

12.    Defendant COUNTRYWIDE FINANCIAL CORPORATION is a thrift holding company. It has numerous subsidiaries that originate, purchase, securitize, sell and service residential and commercial loans; provide loan closing services such as credit reports, appraisals and flood determinations; conduct fixed income securities underwriting and trading activities; provide property, life and casualty insurance; and manage a captive mortgage reinsurance company. Defendant COUNTRYWIDE FINANCIAL CORPORATION owns and operates its wholly owned subsidiary COUNTRYWIDE HOME LOANS, INC.   Defendant COUNTRYWIDE FINANCIAL CORPORATION owned and operated its wholly owned subsidiary FULL SPECTRUM LENDING, INC.

13.    At all times material hereto, Defendant COUNTRYWIDE FINANCIAL CORPORATION and Defendant MOZILO conducted business in the State of Florida and committed the acts and/or omissions which are the subject of this cause of action through Defendant COUNTRYWIDE HOME LOANS, INC. and FULL SPECTRUM LENDING, INC. Defendant COUNTRYWIDE FINANCIAL CORPORATION and Defendant MOZILO controlled and/or otherwise directed the operations of Defendant COUNTRYWIDE HOME LOANS, INC. and FULL SPECTRUM LENDING, INC.

3

14.    Since May 15, 1969, Defendant COUNTRYWIDE HOME LOANS, INC. has been a registered foreign corporation in the State of Florida.   Subsequent to May 15, 1969 and continuing to the present, Defendant COUNTRYWIDE HOME LOANS, INC. has been doing business in the State of Florida

15.    FULL SPECTRUM LENDING, INC., a California corporation, was a wholly owned subsidiary of Defendant COUNTRYWIDE FINANCIAL CORPORATION.   Prior to April 28, 2005, FULL SPECTRUM LENDING, INC. was a Florida registered foreign corporation and did business in the State of Florida.   On or about April 28, 2005, FULL SPECTRUM LENDING, INC. withdrew as a registered foreign corporation in the State of Florida.   Subsequent to April 28, 2005 and continuing to the present, Defendant COUNTRYWIDE HOME LOANS, INC. also has been doing business in the State of Florida through a division named Full Spectrum Lending.

## DECEPTIVE AND UNFAIR TRADE PRACTICES
## CHAPTER 501, PART II FLORIDA STATUTES

16.    Plaintiff adopts, incorporates herein and re-alleges paragraphs 1 through 15 as if fully set forth below.

17.    Commencing on a date unknown, but at least subsequent to January 1, 2004, the Defendants engaged in various deceptive and unfair trade practices, as hereinafter set forth, in violation of Chapter 501, Part II, Florida Statutes (2007).

18.    The deceptive and unfair acts and practices of Defendants were and are to the injury and prejudice of the public and have resulted in damages thereto and as to the Defendants' competitors constitute unfair and deceptive acts and practices and unfair methods of competition within the intent and meaning of Section 501, Part II, Florida Statutes (2007).   Said practices

4

further constitute unfair and deceptive acts and practices within the intent and meaning of the Federal Trade Commission Act and pursuant to the standards of unfairness and deception set forth and interpreted by the Federal Trade Commission and federal courts.

19.    Defendant COUNTRYWIDE FINANCIAL CORPORATION made certain representations about its lending practices in its Form 10-K filings for the years 2002 – 2007 with the United States Securities and Exchange Commission (SEC) as hereinafter set forth. A Form 10-K is an annual corporate report required by the SEC. It is a comprehensive summary of the company's performance and includes such information as company history, audited financial statements and information relating to subsidiaries.    Through these 10-K's, Defendant COUNTRYWIDE FINANCIAL CORPORATION made specific representations relating to the quality and value of its loans to the consuming public, investors and to government sponsored entities such as Fannie Mae and Freddie Mac. They did so by representing in detail the strict underwriting criteria Defendant COUNTRYWIDE FINANCIAL CORPORATION employed for its Prime and Subprime Loans.

20.    In   its   2002   Form   10-K,   Defendant   COUNTRYWIDE   FINANCIAL CORPORATION generally explained the underwriting criteria for Prime Loans and Subprime Loans as follows:

- Employment and income – applicant must exhibit the ability to generate income on regular and ongoing basis in sufficient amount to pay mortgage payment and other debts existing at time of underwriting.

- Subprime Loans, applicants generally do not satisfy Freddie Mac & Fannie Mae guidelines regarding credit history, debt/income ratio and/or cash reserves. Exceptions

generally made when compensating factors exist, such as low loan to value ratio, low debt to income ratio, substantial disposable income or stable employment.

21.     In its 2003 Form 10-K, Defendant COUNTRYWIDE FINANCIAL CORPORATION generally represented that its Credit Policy required consideration of the applicant's capacity to pay and consideration of property value.   Moreover, Defendant COUNTRYWIDE FINANCIAL CORPORATION represented that its underwriting guidelines comply with Freddie Mac and Fannie Mae guidelines for Prime Loans but that guidelines for Subprime Loans were determined by salability in the secondary mortgage market.   Defendant COUNTRYWIDE FINANCIAL CORPORATION also represented that its Loan Origination Standards were designed to produce high quality loans.     Furthermore, Defendant COUNTRYWIDE FINANCIAL CORPORATION stated that nearly all of its loans are sold into secondary market via securities with limited recourse, i.e. Mortgage Backed Securities (MBS).

22.     In its 2004 Form 10-K, Defendant COUNTRYWIDE FINANCIAL CORPORATION represented that a decline in Prime mortgage revenues was offset by increased production from high margin Subprime Loans.    Thus, in 2004, 49% of loans were Subprime Adjustable Rate Mortgages (ARM) versus 18% in 2003 as a result of the increase in fixed mortgage rates and the volume of Subprime and equity loans increased 104% from 2003. Nonetheless, Defendant COUNTRYWIDE FINANCIAL CORPORATION continued to represent that its Credit Policy required consideration of an applicant's capacity to pay and consideration of property value.     Similarly, Defendant COUNTRYWIDE FINANCIAL CORPORATION continued to state that its underwriting guidelines complied with Freddie Mac and Fannie Mae guidelines for Prime Loans while Subprime guidelines were designed so these loans are salable in the secondary market, into which market nearly all of Defendants' loans were

6

sold through Mortgage Backed Securities. Finally, Defendant COUNTRYWIDE FINANCIAL CORPORATION continued to maintain that its Loan origination standards produced high quality loans.

23.   In its 2005 Form 10-K, Defendant COUNTRYWIDE FINANCIAL CORPORATION repeated its statements relating to consideration of a consumers' capacity to pay a loan and about underwriting guidelines for Prime Loans (Freddie Mac and Fannie Mae standards) versus Subprime Loans (salability in secondary market).   However, Defendant COUNTRYWIDE FINANCIAL CORPORATION hedged its previous statements regarding due diligence by shifting its responsibility for income and asset verification to consumers with the following caveat:

> "We depend on the accuracy and completeness of information about customers."
> "We rely on information furnished to us by or on behalf of customers... and on representations of customers as to accuracy."

Defendant COUNTRYWIDE FINANCIAL CORPORATION also stated: "We attribute the overall increase in delinquencies... primarily to the relative increase in the number of loans in the nonprime portfolio....   We believe the delinquency rates... are consistent with industry experience...."

24.   In its 2006 Form 10-K, Defendant COUNTRYWIDE FINANCIAL CORPORATION set forth that "We may experience credit losses due to downward trends in economy and the real estate market" but Defendant COUNTRYWIDE FINANCIAL CORPORATION's "loans are underwritten in accordance with prescribed guidelines." Defendant COUNTRYWIDE FINANCIAL CORPORATION explained that a significant portion of its portfolio consists of pay-option ARM loans which are different from traditional loans in that there is negative amortization in early years.   Nonetheless, Defendant

7

COUNTRYWIDE FINANCIAL CORPORATION affirmed that "we believe our investment criteria have provided us with a high quality investment portfolio and our credit losses should stay within acceptable levels."

25.    In its 2007 Form 10-K, Defendant COUNTRYWIDE FINANCIAL CORPORATION acknowledged that during the latter part of 2007, investor demand for "non-agency mortgage backed securities" (MBS's) abruptly declined.    Defendant COUNTRYWIDE FINANCIAL CORPORATION responded by tightening loan programs and underwriting standards.  In addition, Defendant COUNTRYWIDE FINANCIAL CORPORATION stated that most pay option loans (relating to negatively amortizing ARM loans) were underwritten with stated or limited income documentation and that it tightened underwriting standards during 2007.

26.    Contrary to its Form 10-K representations, Defendants originated Subprime Loans to borrowers who did not have the ability to repay the loan, originated higher interest Subprime Loans to borrowers who otherwise qualified for Prime Loans and otherwise engaged in unfair and/or deceptive marketing and/or trade acts or practices.

27.    Defendants did not adhere to its underwriting standards, allowed the origination of "no documentation or reduced documentation" Subprime Loans and failed to ensure that borrowers had sufficient capacity to repay such mortgage loans.

28.    Defendants did not adhere to underwriting standards for "no documentation or reduced documentation loans" to Subprime borrowers by waiving standards, irrespective of the borrowers' ability to document income and assets.

29.    The Defendants' failure to adhere to underwriting standards in regard to the borrower's capacity to repay engendered fraud as such "no documentation or reduced

8

documentation" Subprime Loans were approved for borrowers who were not qualified and could not afford such loans.

30.     To foster a culture of loan approvals regardless of the borrowers' capacity to pay, Defendants compensated its underwriters with bonuses. Defendants' underwriters, therefore, had incentives to approve as many loans as possible, regardless of credit risk.

31.     Defendants had no procedures or rigid guidelines on how "no documentation or reduced documentation" Subprime Loans were to be approved.  It was the underwriters' responsibility to make the loan work, regardless of whether or not the loan fit the professed underwriting standards.

32.     Defendants made Subprime Loans to borrowers when they knew or should known that the borrowers would not be able to repay the loan once the initial ARM period expired.

33.     Defendants' Subprime Technical Manual sets forth that underwriters should determine for every loan application whether the loan makes sense.  In practice, the Defendants created and/or permitted a culture where its own underwriters were threatened with termination for attempting to verify a borrower's ability to pay, or otherwise impeding loan approval.

34.     In other instances, the culture created and/or permitted by the Defendants encouraged managers to approve Subprime Loan applications that were initially denied by underwriters who suspected fraud.

35.     In furtherance of its policy to place the generation of consumer loans (and maximization of its profits) above concerns about the consumers' ability to meet their loan obligations, Defendants made material misrepresentations to consumers relating to its ARM's by:

9

a)      misrepresenting the amount of time the initial "fixed" interests rates would be in effect;

b)      misrepresenting that the interest rates on the loans were "fixed" when that was not the case;

c)      misrepresenting the manner and degree in which payments would increase subsequent to the termination of the initial fixed rate period; and/or

d)      employing and advertising extremely low "teaser" rates while not properly disclosing that these rates would dramatically increase, resulting in monthly payments which were beyond the capacity for consumers to meet, given the financial/income information provided by these consumers to the Defendants.

The aforesaid misrepresentations were either direct and/or the result of hiding and/or not sufficiently disclosing these material terms to the consumer prior to the closing of the loans.

36.      Defendants employed deceptive marketing practices in an attempt to influence and steer unwary consumers toward the purchase of risky and costly mortgages and home loans.

37.      Defendants' Subprime Technical Manual sets forth that "no loan will be made that benefits only the third party originator and/or Countrywide (e.g. origination fees/charges collected)." Notwithstanding this stated policy, Defendants failed to afford borrowers the opportunity to avail themselves of alternate loan options, certain of which carried lower rates of interest. Thus, Defendants made Subprime Loans to borrowers when they knew or should have known that the borrowers were qualified for alternate loans at lower rates of interest.

38.      Defendants violated Chapter 501, Part II, Florida Statutes (2007) in part by representing to borrowers that the Defendants' review of the borrowers' Subprime Loan

10

applications, either expressly or impliedly, was done in accordance with underwriting standards to confirm that the borrowers were able to repay the loans pursuant to its terms.

39.    Defendants violated Chapter 501, Part II, Florida Statutes (2007) in part by representing to borrowers that the Defendants' approval of the borrowers' Subprime Loan applications, either expressly or impliedly, confirmed that the borrowers were able to repay the loans pursuant to its terms.

40.    Defendants violated Chapter 501, Part II, Florida Statutes (2007) in part by representing to borrowers that the Defendants' closing and funding of the borrowers' Subprime Loan mortgages, either expressly or impliedly, confirmed that the borrowers were able to repay the loans pursuant to its terms.

41.    Defendants violated Chapter 501, Part II, Florida Statutes (2007) in part by representing to investors who purchased the Mortgage Backed Securities issued by the Defendants that the Defendants' underwriting and approval of the borrowers' Subprime Loan applications, either expressly or impliedly, and the closing and funding of the borrowers' Subprime Loan mortgages, either expressly or impliedly, confirmed that the borrowers were able to repay the loans pursuant to its terms.

42.    Defendants violated Chapter 501, Part II, Florida Statutes (2007) in part by representing, either expressly or impliedly, to borrowers and investors who purchased the Mortgage Backed Securities issued by the Defendants that the Defendants exercised due diligence in the underwriting, approval, closing and funding borrowers' Subprime Loan applications and mortgages.

**WHEREFORE,** Plaintiff Office of the Attorney General, Department of Legal Affairs, State of Florida respectfully demands the following relief:

1.      Award actual damages to all consumers who are shown to have been injured in this action, pursuant to Section 501.207(1)(c), Florida Statutes (2007).

2...      Assess against Defendants herein civil penalties in the amount of Ten Thousand Dollars ($10,000.00) for each act or practice found to be in violation of Chapter 501, Part II, Florida Statutes (2007).

3.      Award reasonable attorneys fees pursuant to F.S. 501.2105.

4.      Grant equitable relief pursuant to F.S. 501.207.

5.      Waive the posting of any bond by Plaintiff in this action.

6.      Grant such other relief as this Honorable Court deems just and proper.

Dated:  June 30, 2008

Respectfully Submitted

**BILL McCOLLUM**
**Attorney General**
By:

ROBERT R. JULIAN
Bureau Chief, Economic Crimes Division
South Florida Region
Fl Bar No. 262706
GEORGE E. RUDD
Fl Bar No. 0178136
FULVIO JOSEPH GENTILI
Fl Bar No. 37493
JACK A. NORRIS
Fl Bar No. 364861
PATRICE MALLOY
Fl Bar No. 137911
Assistant Attorneys General
Office of the Attorney General
Department of Legal Affairs
110 S.E. 6th Street, Tenth Floor
Ft. Lauderdale, Florida 33301
(954) 712-4600



A TRUE COPY

AUG 26 2008

HOWARD C. FORMAN
CLERK OF CIRCUIT COURT
BROWARD COUNTY, FL

12

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, STATE OF FLORIDA<br><br>       Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, COUNTRYWIDE HOME LOANS, INC., a New York Corporation, and ANGELO R. MOZILO, individually and in his capacity as Chief Executive Officer of Defendant COUNTRYWIDE FINANACIAL CORPORATION,<br><br>       Defendants. | Civil Action No. |

## ANGELO MOZILO'S CONSENT TO REMOVAL

Defendant Angelo Mozilo ("Mozilo"), by and through undersigned counsel, and without waiving any rights and defenses, including specifically defenses and objections to venue, personal jurisdiction, and service, hereby expressly consents to the removal to this Court of the action titled *Office of the Attorney General, Department of Legal Affairs, State of Florida v. Countrywide Financial Corp. et al.*, from the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida (Case No. 08-30105) (the "Action"), by Defendants Countrywide Financial Corp. and Countrywide Home Loans, Inc. (collectively, the "Countrywide Defendants"). Mozilo reserves his rights to file responsive pleadings, motions, and/or other papers pursuant to Fed. R. Civ. P. 12.

Mozilo provides this Consent to the Countrywide Defendants with the understanding that the Countrywide Defendants will file a Notice of Removal, removing the Action to this Court, and that the Countrywide Defendants will file this Consent with the Notice of Removal.

Respectfully submitted,

Dated: September 22, 2008

Kenneth R. Heitz
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199
Email: kheitz@irell.com

*Attorneys for Defendant*
*Angelo Mozilo*

- 2 -

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, STATE OF FLORIDA<br><br>       Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, COUNTRYWIDE HOME LOANS, INC., a New York Corporation, and ANGELO R. MOZILO, individually and in his capacity as Chief Executive Officer of Defendant COUNTRYWIDE FINANACIAL CORPORATION,<br><br>       Defendants. | Civil Action No. |

## DECLARATION OF ANAITA BAHADURJI

I, Anaita Bahadurji, state that if called to testify in this case, among those things to which I would testify as to my own personal knowledge are the following:

1.      I am a Senior Business Analyst at Countrywide Financial Corporation ("Countrywide"). My job responsibilities include gathering and analyzing data relating to the number and characteristics of mortgage loans originated and serviced by Countrywide affiliates.

2.      I obtained the information for this declaration from Countrywide's mortgage databases, with which I am readily familiar.

3.      These databases reveal that since January 1, 2004, Countrywide affiliates have originated more than 63,000 sub-prime mortgage loans secured by real property located in Florida.

4.      These databases also reveal that since January 1, 2004, Countrywide affiliates

have serviced more than 178,000 sub-prime mortgage loans secured by real property located in

Florida.


I declare under penalty of perjury that the foregoing is true and correct.  Executed this

23rd day of September, 2008, in Simi Valley, CA.

_____

Anaita Bahadurji

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

| | |
|---|---|
| OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, STATE OF FLORIDA<br><br>        Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, COUNTRYWIDE HOME LOANS, INC., a New York Corporation, and ANGELO R. MOZILO, individually and in his capacity as Chief Executive Officer of Defendant COUNTRYWIDE FINANACIAL CORPORATION,<br><br>        Defendants. | Civil Action No. |

## DECLARATION OF KIMBERLY SHAMBLEY

I, Kimberly Shambley, state that if called to testify in this case, among those things to which I would testify as to my own personal knowledge are the following:

1.     I am a Senior Vice President, Assistant General Counsel at Countrywide Home Loans, Inc. My job responsibilities include being familiar with the state of incorporation and principal place of business of Countrywide Home Loans, Inc. and its parent company, Countrywide Financial Corporation.

2.     Countrywide Financial Corporation is incorporated in Delaware and has its principal place of business in Calabasas, California.

3.     Countrywide Home Loans, Inc. is incorporated in New York and has its principal place of business in Calabasas, California.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23d day of September, 2008, in Plano, Texas.

Kimberly Shambley

Filed by ___ **MB** D.C.
ELECTRONIC

# 08-61511-Civ-ALTONAGA/BROWN

JS 44 (Rev. 2/08)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases**

**Sept. 23, 2008**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Office of the Attorney General, Department of Legal Affairs, State of Florida | Countrywide Financial Corporation, a Delaware Corporation, Countrywide Home Loans, Inc., a New York Corporation, and |

**(b)** County of Residence of First Listed Plaintiff   Leon
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Delaware
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

08cv 61511-CMA/STB

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Robert R. Julian, Assistant Attorney General, Office of the Attorney General, Department of Legal Affairs, 110 SE 6th Street, Tenth Floor, Fort Lauderdale, FL 33301

Attorneys (If Known)

Linda A. Conahan, Esq., Gunster, Yoakley & Stewart, P.A., 450 East Las Olas Blvd., Site 1400, Fort Lauderdale, FL 33301

**(d)** Check County Where Action Arose:   ☐ MIAMI- DADE   ☐ MONROE   ☑ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE  HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only) |
|---|---|

II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☑ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☑ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. Security | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization | | ☐ 950 Constitutionality of State |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Application | | Statutes |
| | Other | | ☐ 463 Habeas Corpus-Alien | | |
| | ☐ 440 Other Civil Rights | | Detainee | | |
| | | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding   ☑ 2 Removed from State Court   ☐ 3 Re-filed- (see VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

| VI. RELATED/RE-FILED CASE(S). | (See instructions second page): | a) Re-filed Case ☐ YES ☑ NO | | b) Related Cases ☐ YES ☑ NO |
|---|---|---|---|---|
| | | JUDGE | DOCKET NUMBER | |

**VII. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
15 USC 1601 et. seq.; Floirda Statute 501.201 et. seq., Unfair and deceptive trade practices; violation of Federal Truth in Lending Act
LENGTH OF TRIAL via 25 days estimated (for both sides to try entire case)

| VIII. REQUESTED IN COMPLAINT: | ☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 5,000,000.00 | CHECK YES only if demanded in complaint: JURY DEMAND:   ☐ Yes  ☑ No |
|---|---|---|---|

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD   _Linda A. Conahan_

DATE   September 23, 2008

FOR OFFICE USE ONLY
AMOUNT 7350⁰⁰   RECEIPT # 544242   IFP